UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

PERCY BANCE KERN, III,

           Plaintiff,           Case No. 1:11-cv-32

v.                                         Honorable Robert Holmes Bell

REBECCA WOODS et al.,

           Defendants.
_____/

**OPINION**

This is a civil rights action brought by a state prisoner pursuant to 42 U.S.C. § 1983. The Court has granted Plaintiff leave to proceed *in forma pauperis*. Under the Prison Litigation Reform Act, PUB. L. NO. 104-134, 110 STAT. 1321 (1996), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, Plaintiff's action will be dismissed for failure to state a claim.

**Discussion**

I. <u>Factual allegations</u>

Plaintiff Percy Bance Kern, III presently is incarcerated with the Michigan Department of Corrections (MDOC) and housed at the Baraga Maximum Correctional Facility, though the conduct about which he complains occurred while he was housed at the Ionia Maximum Correctional Facility (ICF). He sues the MDOC Manager of Internal Affairs Stephen Marschke and the following ICF employees: Resident Unit Officers Rebecca Woods and Harold Barnes; Sergeant Joh Nehf; and Warden Willie Smith.

Plaintiff alleges that, on November 16, 2009, he was housed in ICF's Unit 5. As he came out of his cell and walked up the unit gallery, he was attacked by another prisoner, (unknown) Luther, ID #625274. At the time of the assault, no corrections officers were within sight on the unit. According to the complaint, Luther rushed Plaintiff and Plaintiff began to back up toward his cell, blocking Luther's hits with his arms. When Plaintiff reached his cell and turned to enter it, Luther struck Plaintiff in the right eye, knocking him over his bunk. Plaintiff lost consciousness for some period. When he regained consciousness, he saw that Luther had locked himself in the cell with Plaintiff and that Plaintiff had been pulled to the center of his bunk and onto his knees, with his pants pulled halfway down his legs. Luther was kneeling behind Plaintiff, holding Plaintiff down. Plaintiff attempted to pull up his pants so that he could stand, but Luther held him in a position from which he could not escape. After Plaintiff caught his breath, he pushed back as hard as he could to get Luther to release his hold. Luther then lifted Plaintiff from the bunk and the two struggled, twisting and turning until Plaintiff could get one arm free. Plaintiff grabbed an ink pen from his desk and stabbed Luther's arm repeatedly to get Luther to release him. Once released, Plaintiff dropped

to his knees and rolled under the bed. Luther continued to reach for him, but Plaintiff pulled his legs up to his chest until help came.

According to Plaintiff, no officer came around for at least an hour. When he heard an officer outside his door, Plaintiff called out and Barnes responded. Plaintiff contends that, when he looked into the cell, Barnes could clearly see Plaintiff under his bunk and Luther sitting on Plaintiff's desk. Barnes opened Plaintiff's cell and led Luther out and back to his own cell. Barnes then continued with his rounds without offering aid to Plaintiff, notwithstanding Plaintiff's radily visible black eye. As Barnes walked away, Plaintiff called out that he wanted to speak with a sergeant. Barnes summoned Nehf, but he did not tell Nehf that he had removed Luther from Plaintiff's cell.

When Defendant Sergeant Nehf came to Plaintiff's cell, Plaintiff told him that he had been attacked and that he believed he had been raped. Nehf called for Plaintiff's door to be opened and then escorted Plaintiff to the B-wing day room. Plaintiff asked where Nehf and his officers had been, Nehf reported that they had been sitting in the unit, but they did not see or hear anything. Plaintiff questioned how that could have happened when the attack began on the gallery. Plaintiff then explained that Luther had attacked him, forced him back into his room, and knocked him unconscious. Although Plaintiff could not be certain because he had been unconscious, he believed he had been raped because his pants were down and Luther was holding him and kneeling behind him. Plaintiff described striking Luther with a pen in order to obtain his release and then rolling under his bed for safety. Nehf radioed to the control center for the lieutenant.

Lieutenant Cheeks came to the B-wing day room and asked Plaintiff about the incident. She then escorted Plaintiff to the medical unit. Health care workers took pictures of

Plaintiff's face and took him to Ionia General Hospital. At the hospital, Plaintiff was examined by a nurse and a rape kit was completed. A Michigan State Investigator asked Plaintiff if he wanted to press charges and Plaintiff stated, "[Y]es!" (Compl., Page ID#6.) Plaintiff was then counseled by rape support staff before being taken back to ICF.

When Plaintiff returned to ICF, he was placed in temporary segregation in the same unit on the charge of assaulting Luther with the pen. The following day, Plaintiff received the misconduct ticket for assaulting Luther, which was written by Defendant Barnes. Plaintiff asked the investigator to obtain the video of Unit 5 and statements from the officers who were supposed to be supervising. Plaintiff defended the misconduct on the ground of self-defense. He ultimately was found not guilty of the misconduct based on the video and on Luther's admission that he had entered Plaintiff's cell and hit him.

During the seven days he spent in segregation, Plaintiff was taken back to health care for treatment of his eye and a twisted ankle. He was given Ultram for pain and issued crutches because he could not put weight on his ankle. Plaintiff asked to be moved out of the unit and away from the officers who failed adequately to supervise the unit. After Plaintiff was found not guilty, he was taken off segregation but left in the same cell. Plaintiff again asked to be moved to a different unit, but he was not moved. Plaintiff filed grievances about the incident, asserting that the Resident Unit Officers had been in violation of MDOC rules. When he did not receive timely responses, he wrote to Defendant Warden Smith, as the Step II responder. Smith denied knowledge of the event. Plaintiff wrote a letter to Defendant Marschke, enclosing another grievance. Marschke returned his grievance, indicating that Plaintiff could not send a grievance directly to Step III. Marschke eventually responded to another inquiry by Plaintiff, advising Plaintiff that Luther had

been found to be the aggressor and dismissing the suggestion that Barnes, Woods, and Nefh were not properly supervising prisoner movement to and from the dining hall at the time of the incident.

Plaintiff seeks damages in excess of $350,000 from each Defendant.

II. <u>Failure to state a claim</u>

A complaint may be dismissed for failure to state a claim if "'it fails to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 129 S. Ct. at 1949. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 129 S. Ct. at 1949 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – that the pleader is entitled to relief." *Iqbal*, 129 S. Ct. at 1950 (quoting FED. R. CIV. P. 8(a)(2)); *see also Hill v. Lappin*, ___ F.3d ___, 2010 WL 5288892, at *2 (6th Cir. Dec. 28, 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(i)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Dominguez v. Corr. Med. Servs.*, 555 F.3d 543, 549 (6th Cir. 2009). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

### A. Eighth Amendment

Plaintiff does not cite the constitutional basis for his claims, but they appear to implicate the Eighth Amendment. Plaintiff alleges that Defendants Woods, Barnes and Nehf were negligent in their supervision of prisoners during their movement between the cells and the dining hall, which allowed Luther to assault Plaintiff. He also complains that Barnes failed adequately to respond to Plaintiff's obvious medical need and caused Plaintiff to be placed in segregation for seven days. He suggests that Defendants McGee and Marschke are responsible as supervisors or because they failed adequately to address his grievances.

The Eighth Amendment imposes a constitutional limitation on the power of the states to punish those convicted of crimes. Punishment may not be "barbarous" nor may it contravene society's "evolving standards of decency." *Rhodes v. Chapman*, 452 U.S. 337, 345-46 (1981). The Amendment, therefore, prohibits conduct by prison officials that involves the "unnecessary and wanton infliction of pain." *Ivey v. Wilson*, 832 F.2d 950, 954 (6th Cir. 1987) (per curiam) (quoting *Rhodes*, 452 U.S. at 346). The deprivation alleged must result in the denial of the "minimal civilized measure of life's necessities." *Rhodes*, 452 U.S. at 347; *see also Wilson v. Yaklich*, 148 F.3d 596, 600-01 (6th Cir. 1998). The Eighth Amendment is only concerned with "deprivations of essential

food, medical care, or sanitation" or "other conditions intolerable for prison confinement." *Rhodes*, 452 U.S. at 348 (citation omitted). Moreover, "[n]ot every unpleasant experience a prisoner might endure while incarcerated constitutes cruel and unusual punishment within the meaning of the Eighth Amendment." *Ivey*, 832 F.2d at 954.

In its prohibition of "cruel and unusual punishments," the Eighth Amendment places restraints on prison officials, directing that they may not use excessive physical force against prisoners and must also "take reasonable measures to guarantee the safety of the inmates." *Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (quoting *Hudson v. Palmer*, 468 U.S. 517, 526-527 (1984)). To establish liability under the Eighth Amendment for a claim based on a failure to prevent harm to a prisoner, a plaintiff must show that prison officials were deliberately indifferent to a substantial risk of harm to some inmate. *Farmer,* 511 U.S. at 834; *Helling v. McKinney*, 509 U.S. 25, 32 (1993); *Greene v. Bowles,* 361 F.3d 290, 294 (6th Cir. 2004); *Curry v. Scott*, 249 F.3d 493, 506 (6th Cir. 2001). To demonstrate deliberate indifference, a plaintiff must allege facts that would show both that a substantial risk of harm existed and that the defendant was subjectively aware of but disregarded that risk. *Greene*, 361 F.3d at 294 (noting that knowledge of a risk posed by an inmate to other inmates is sufficient circumstantial evidence of awareness, even if the official is not aware of any particularized risk to the plaintiff).

Here, Plaintiff alleges no facts that would support a claim that, prior to the assault, any Defendant was aware that Luther presented a substantial risk of serious harm to any prisoner. Plaintiff does not allege that Luther threatened him or threatened any other prisoner. He does not allege that Luther had a history of assaulting other prisoners. Further, according to his own allegations, none of the Defendants was present on the gallery when Luther attacked Plaintiff, and

the majority of the assault occurred inside Plaintiff's cell behind a closed door. Plaintiff acknowledges that, at the time of the assault, Defendants were supervising the movement of a large number of prisoners to and from the dining hall. While Plaintiff suggests that the assault should have been overheard, he does not allege that he cried out while the attack was ongoing. Indeed, he alleges that he was unconscious for some significant part of the attack. In contrast, Plaintiff clearly alleges that he called out to Defendant Barnes after the assault was over, when he heard Barnes making rounds of the unit. In sum, Plaintiff's allegations, at best, demonstrate that Defendants Woods, Barns and Nehf were negligent in their supervision of the unit during the prisoner transfer. Mere negligence is insufficient to support an Eighth Amendment claim. *Estelle*, 429 U.S. at 105-06. Plaintiff has alleged facts that create no more than the sheerest possibility any Defendant knew or disregarded a substantial risk of serious harm to Plaintiff or that they overheard and disregarded the ongoing assault. *Iqbal*, 129 S. Ct. at 1950 (holding that, to state a claim, a plaintiff must allege facts that are plausible, not merely possible).[1]

Plaintiff next suggests that Defendant Barnes violated the Eighth Amendment by not immediately investigating Plaintiff's injuries and obtaining medical assistance. The Eighth Amendment obligates prison authorities to provide medical care to incarcerated individuals, as a failure to provide such care would be inconsistent with contemporary standards of decency. *Estelle v. Gamble*, 429 U.S. 102, 103-04 (1976). The Eighth Amendment is violated when a prison official is deliberately indifferent to the serious medical needs of a prisoner. *Id.* at 104-05; *Comstock v. McCrary*, 273 F.3d 693, 702 (6th Cir. 2001).

---

[1]The Court notes that, although Plaintiff has asked to be moved to another unit, he does not allege that he continues to be at risk from Luther or any other prisoner. He therefore fails to allege that the failure to move him amounts to deliberate indifference to a substantial risk of future serious harm.

As with claims based on a failure to protect, a claim of inadequate medical care has both an objective and a subjective component. To satisfy the objective component, the plaintiff must allege that the medical need at issue is sufficiently serious. *Id.* In other words, the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm. *Id.* The objective component of the adequate medical care test is satisfied "[w]here the seriousness of a prisoner's need[ ] for medical care is obvious even to a lay person." *Blackmore v. Kalamazoo County*, 390 F.3d 890, 899 (6th Cir. 2004). If, however the need involves "minor maladies or non-obvious complaints of a serious need for medical care," *Blackmore*, 390 F.3d at 898, the inmate must "place verifying medical evidence in the record to establish the detrimental effect of the delay in medical treatment." *Napier v. Madison County, Ky.*, 238 F.3d 739, 742 (6th Cir. 2001). The subjective component requires an inmate to show that prison officials have "a sufficiently culpable state of mind in denying medical care." *Brown v. Bargery*, 207 F.3d 863, 867 (6th Cir. 2000) (citing *Farmer*, 511 U.S. at 834). Deliberate indifference "entails something more than mere negligence," *Farmer,* 511 U.S. at 835, but can be "satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Id.* Under *Farmer*, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837.

Plaintiff's factual allegations against Defendant Barnes fail to support either prong of the deliberate indifference standard. Accepting as true Plaintiff's allegation that Defendant Barnes saw him under his bunk and saw his black eye, Plaintiff has not alleged that Barnes was aware of facts that would have demonstrated to a layman that Plaintiff had a serious medical need that required immediate treatment. Moreover, he fails to allege how the several-minute delay had any detrimental effect on his treatment. Barnes relayed Plaintiff's request to speak with the sergeant, and

Defendant Sergeant Nehf promptly appeared at Plaintiff's cell to investigate. Nehf immediately escorted him to an area in which he could conduct an interview. After asking a few questions, Nehf called Lieutenant Cheeks, who, after a few more questions, escorted Plaintiff to health care for treatment. Plaintiff's injuries were documented and he was sent to the hospital emergency room for treatment. Plaintiff's allegations fail to demonstrate any significant delay in treatment, much less a delay that would create a substantial risk of serious harm to Plaintiff. Plaintiff's also fails to allege that Defendant Barnes acted with the requisite subjective intent to disregard any risk to Plaintiff. Barnes merely completed his rounds and before reporting Plaintiff's request to Nehf. Such allegations are inadequate to demonstrate deliberate indifference.

Further, to the extent that Plaintiff intends to argue that Barnes violated the Eighth Amendment by causing Plaintiff to be confined to segregation for seven days, Plaintiff also fails to state a claim. Placement in segregation is a routine discomfort that is a part of the penalty that criminal offenders pay for their offenses against society, and it is insufficient to support an Eighth Amendment claim. *See Hudson v.. McMillian*, 503 U.S. 1, 9 (1992).

Plaintiff's Eighth-Amendment claim against Nehf and Marshke is even less substantial. Plaintiff alleges only that Nehf and Marschke failed adequately to address his grievances and to be aware of issues over which they had supervisory authority. Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior or vicarious liability. *Iqbal*, 129 S. Ct. at 1948; *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 691(1978); *Everson v. Leis*, 556 F.3d 484, 495 (6th Cir. 2009). A claimed constitutional violation must be based upon active unconstitutional behavior. *Grinter v. Knight*, 532 F.3d 567, 575 (6th Cir. 2008); *Greene v. Barber*, 310 F.3d 889, 899 (6th Cir. 2002). The acts of one's subordinates are not enough, nor can supervisory liability be based upon the mere failure to

act. *Grinter*, 532 F.3d at 575; *Greene*, 310 F.3d at 899; *Summers v. Leis*, 368 F.3d 881, 888 (6th Cir. 2004). Moreover, § 1983 liability may not be imposed simply because a supervisor denied an administrative grievance or failed to act based upon information contained in a grievance. *See Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999). "[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 129 S. Ct. at 1948. Plaintiff has failed to allege that Defendants Nehf and Marschke engaged in any active unconstitutional behavior. Accordingly, he fails to state a claim against them.

## **Conclusion**

Having conducted the review now required by the Prison Litigation Reform Act, the Court determines that Plaintiff's action will be dismissed for failure to state a claim pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c).

The Court must next decide whether an appeal of this action would be in good faith within the meaning of 28 U.S.C. § 1915(a)(3). *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997). For the same reasons that the Court dismisses the action, the Court discerns no good-faith basis for an appeal. Should Plaintiff appeal this decision, the Court will assess the $455.00 appellate filing fee pursuant to § 1915(b)(1), *see McGore*, 114 F.3d at 610-11, unless Plaintiff is barred from proceeding *in forma pauperis*, e.g., by the "three-strikes" rule of § 1915(g). If he is barred, he will be required to pay the $455.00 appellate filing fee in one lump sum.

This is a dismissal as described by 28 U.S.C. § 1915(g).

A Judgment consistent with this Opinion will be entered.


Dated: March 10, 2011 /s/ Robert Holmes Bell
ROBERT HOLMES BELL
UNITED STATES DISTRICT JUDGE